UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL VANDERGRIFF,

    *Plaintiff*,

v.    CASE NO. 12-CV-10070

COMMISSIONER OF    DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,    MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, for disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits ("DIB"), and for supplemental security income ("SSI") benefits. This matter is currently before this Court on cross-motions for summary judgment. (Docs. 10, 13.)

Plaintiff was 46 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 31, 115, 122.) Plaintiff's employment history includes work as a fitter/welder from 1985 through 2007. (Tr. at 163.) Plaintiff filed the instant claims on May 26, 2009, alleging that he became unable to work on December 1, 2007. (Tr. at 115, 122.) The claims were denied at the initial administrative stages. (Tr. at 60, 61.) In denying Plaintiff's claims, the Commissioner considered history of fractures of lower limb and essential hypertension as possible bases for disability. (*Id.*) On November 8, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Gary Vanderhoof, who considered the application for benefits *de novo*. (Tr. at 10-20; 31-59.) In a decision dated December 7, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 20.) Plaintiff requested a review of this unfavorable decision on January 27, 2011. (Tr. at 7-9.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 10, 2011, when, after review of additional exhibits[2] (Tr. at 173-76, 318-31), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On January 9, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

6

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2012, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2007. (Tr. at 15.) At step two, the ALJ found that Plaintiff's history of right lower extremity fractures and hypertension were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15-16.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 18.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual – age 18 to 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 16-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 20.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was involved in a pedestrian/motor vehicle accident in 1981 "and sustained a double compound fracture with torn tendons and ligaments in his right lower leg." (Doc. 10 at 3.)

On May 13, 2000, an x-ray of Plaintiff's right knee showed a potential soft tissue/ligamentous injury and evidence of previous surgeries. (Tr. at 177.)

Plaintiff fractured his lower right leg again in 2005, but by August 2005, Marc A. Milia, M.D., indicated that Plaintiff was "doing well[,]" that "[o]n exam his right tibia has no instability," and that "[a]ll of his wounds are healed." (Tr. at 283.)

On March 8, 2007, Plaintiff sought treatment in the emergency room for chest pains. (Tr. at 209.) An x-ray of Plaintiff's chest was normal. (Tr. at 231.) Plaintiff indicated to emergency room personnel that he had used marijuana four hours prior to the visit, drank one-half of a fifth

7

of Canadian Club whiskey half an hour prior to the visit, and had ingested $600 worth of crack cocaine six hours prior to the visit. (Tr. at 209-10.) It was also noted that Plaintiff smokes two packs of cigarettes per day and has done so for the past 31 years, that he consumes more than ten alcoholic beverages per day, and that he has a history of cannabis and cocaine abuse. (Tr. at 191, 209, 219.)

On Dec. 23, 2008, Plaintiff sought treatment for right leg pain. (Tr. at 190.) Plaintiff was given pain medication and an antibiotic. (Tr. at 192-93.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on September 3, 2009, by Christina Kalmar, who concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was limited to no constant right foot controls. (Tr. at 235.) The assessment also concluded that Plaintiff was occasionally limited in all the postural areas and was frequently limited as to balancing. (Tr. at 236.) There were no manipulative, visual, communicative or environmental limitations established. (Tr. at 237-38.) The assessment noted that Plaintiff has used a two-inch lift in his right boot since 1981, that his gait is intact with no deficits, and that he continued working after this date until 2007. (Tr. at 239.) The assessment found Plaintiff "partially credible." (*Id.*) There was no medical source statement regarding Plaintiff's physical abilities to compare or contrast findings with. (Tr. at 240.)

On September 18, 2009, x-rays of the left knee were normal and x-rays of the right tibia and fibula showed the same deformities noted in previous x-rays resulting from past surgeries. (Tr. at 256.)

On October 14, 2010, Kirti Jain, M.D., completed a medical source statement wherein he opined that Plaintiff could occasionally and frequently lift less than ten pounds, stand or walk for

8

less than two hours in an eight-hour workday, that Plaintiff's ability to sit was not affected by the impairment, that Plaintiff was occasionally limited in all postural areas, and that he should never climb. (Tr. at 311-12.) Dr. Jain also concluded that Plaintiff should only perform manipulations occasionally and that he is unlimited in his visual and communicative abilities. (Tr. at 313.) Dr. Jain found that environmental conditions could make Plaintiff's condition worse and concluded that Plaintiff was unable to work. (Tr. at 314, 317.)

In his daily activity report, Plaintiff stated that he was able to watch television, "pick up house[,] make my meals and clean up[,] let my dog in and out, and try to keep my yard clean[.]" (Tr. at 145.) Plaintiff indicated that the only difficulty he has with personal care is putting on and tying his boots. (Tr. at 146.) Plaintiff also stated that he tries to go outside every day, depending on the weather, and that he rides in cars but is not able to drive. (Tr. at 147-49.) Plaintiff indicated he is able to grocery shop for three or four hours at a time and that he can handle his own finances. (Tr. at 148.) Plaintiff also socializes with friends and family on the phone and in person. (Tr. at 149.)

At the administrative hearing, George Decherd, M.D., a medical expert, testified that he had reviewed the medical evidence, which he summarized. (Tr. at 31-36.) Dr. Decherd opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, could stand or walk for two to four hours of an eight-hour workday, and could sit for six hours of an eight-hour workday. (Tr. at 36.) Dr. Decherd added that Plaintiff should not climb, balance, or work at dangerous heights, and that he could only occasionally kneel, squat, crouch or crawl. (Tr. at 36-37.) When Plaintiff's counsel mention Plaintiff's chronic obstructive pulmonary disease ("COPD") and the environmental limitations that condition could cause, Dr. Echerd stated that although COPD was

"mentioned" in the record, he "didn't see any pulmonary function studies or anything else really to quantify that." (Tr. at 38.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who could

> [l]ift and carry 20 pounds occasionally and 10 pounds frequently. Occasional posturals but I would not want him to do any crawling, nor should he balance as a condition of employment. He could only stand and walk two to four hours of an eight hour day, sit six with normal breaks. He should not – he'd be precluded from climbing ladders, ropes or scaffolds or working at unprotected heights around dangerous moving machinery. I would preclude him from having to use a right foot control as a condition of employment. And I would have him not working as a working condition in extremes of cold or heat or excessive dust, odors, gas or poor ventilation as a condition of employment.

(Tr. at 54.) The VE responded that such a person could not perform Plaintiff's past work but that he could perform the 1,200 unskilled, sedentary jobs of addressing or stuffing envelopes available in Michigan and the 1,400 jobs assembling buttons and other miscellaneous items available in Michigan. (Tr. at 55-56.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 16-18.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

10

20 C.F.R. § 404.1567(b). I note, however, that the jobs discussed by the VE were in the sedentary category. Of course, if a person can perform light work, they can also perform sedentary work.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred in relying in [sic] the equivocal testimony of the non-examining medical expert in determining Mr. Vandergriff's residual functional capacity instead of the opinion of Mr. Vandergriff's own treating physician of record" (Doc. 10 at 5-13), that the ALJ's "credibility finding is not based on substantial evidence" (Doc. 10 at 13-14), and that the ALJ "failed to properly evaluate Mr. Vandergriff's subjective complaints of pain and other symptoms." (Doc. 10 at 14-15.)

### a. Treating Sources

Plaintiff contends that the ALJ did not give appropriate weight to the opinions of Dr. Marc Milia, Plaintiff's orthopedic surgeon, and Dr. Kirti Jain. (Doc. 10 at 10.) The only topic referenced by Plaintiff regarding Dr. Milia is Dr. Milia's conclusion that Plaintiff "is very subject to further injury upon minimal contact due to the brittleness of his bones." (*Id.*) I suggest that the ALJ's

11

evaluation does not conflict with Dr. Milia's conclusion since the ALJ's hypothetical limited Plaintiff to light work, the jobs referenced by the VE were sedentary jobs, and the ALJ required that Plaintiff avoid exposure to extreme temperatures and that he avoid climbing, working at unprotected heights, or around dangerous moving machinery. (Tr. at 16, 54.) As to the ALJ's assessment of Dr. Jain's opinions, Plaintiff points exclusively to Dr. Jain's findings contained in exhibits 11F, 12F, and 13F. (Doc. 10 at 10-11; Tr. at 318-31; *infra* n.2.) All three of these exhibits were admitted into evidence at the Appeals Council stage and are not a part of the record subject to judicial review for substantial evidence. *See Cline,* 96 F.3d at 148; *Cotton,* 2 F.3d at 696. Since the court cannot consider these records, I suggest that Plaintiff's argument regarding the ALJ's treatment of Dr. Jain is without merit.

      **b.**      **Credibility Determination**

Plaintiff also contends that the ALJ's "credibility finding is not based on substantial evidence" (Doc. 10 at 13-14) and that the ALJ "failed to properly evaluate Mr. Vandergriff's subjective complaints of pain and other symptoms." (Doc. 10 at 14-15.) When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an

ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely*

13

because they are not substantiated by objective medical evidence." S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

   (i)    [D]aily activities;

   (ii)   The location, duration, frequency, and intensity of . . . pain;

   (iii)  Precipitating and aggravating factors;

   (iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

   (v)    Treatment, other than medication, . . . received for relief of . . . pain;

   (vi)   Any measures . . . used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

In the instant case, the ALJ thoughtfully considered all the evidence of record and determined that Plaintiff's complaints as to the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC analysis. (Tr. at 18.) After examining the record evidence, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding his level of pain was not fully credible.

I note that the RFC assessment also found Plaintiff to be partially credible. (Tr. at 239.) In addition, the assessment noted that although Plaintiff has been suffering effects from his initial fracture, such as wearing a two-inch lift in his shoe, his gait was intact with no deficits and he continued working long after 1981, i.e., until 2007. (Tr. at 239.) In addition, even after the second fracture in 2005, Plaintiff's treating physician, Dr. Milia, indicated that Plaintiff was "doing well[,]" that "his right tibia has no instability" and that "[a]ll of his wounds are healed." (Tr. at 283.) On September 18, 2009, x-rays of the left knee were normal and x-rays of the right tibia and

fibula showed the same deformities noted in previous x-rays resulting from past surgeries. (Tr. at 256.) Even Dr. Jain found that Plaintiff could stand or walk for less than two hours in an eight-hour workday, but that Plaintiff's ability to sit was not affected by the impairment. (Tr. at 311-12.) Plaintiff's treatment for his leg pain was limited to pain medication and antibiotics when needed. (Tr. at 192-93.) Such modest treatment is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). Accordingly, I suggest that there is no objective medical evidence even approaching a finding of total disability and, thus, that substantial evidence supports the ALJ's credibility determination.

I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he can watch television, pick up around the house, make his meals and clean up after, let his dog in and out, keep his yard clean, go outside nearly every day, ride in the car, grocery shop for three or four hours at a time, handle his own finances, and socialize with friends and family on the phone and in person. (Tr. at 145-49.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/ **Charles E Binder**
                                                  CHARLES E. BINDER
Dated: December 4, 2012                     United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: December 4, 2012                                     By    s/Patricia T. Morris
                                                                            Law Clerk to Magistrate Judge Binder